BELKNAP MILLS, (CROMPTON v.) See Case No. 3,406.

## Case No. 1,245.

BELL et al. v. The ANN.

[2 Pet. Adm. 278.] [1]

District Court, D. Pennsylvania. 1807.

SALVAGE—DERELICT—AMOUNT OF AWARD.

1. The ship Belvidere fell in with the Ann at sea, deserted, abandoned, and in danger of

[1] [Reported by Hon. Richard Peters, District Judge.]

sinking. The Ann was brought into the port of Philadelphia, by a part of the crew of the Belvidere, and libelled for salvage. The court allowed one half of the net amount of the sales, as salvage.

See 1 Pet. Adm. 31, 48, 70, 87, [Warder v. La Belle Creole, Case No. 17,165; Taylor v. Cato, Id. 13,786; Clayton v. The Harmony, Id. 2,871; Brevoor v. The Fair American, Id. 1,847.]

2. The seamen put on board the Ann, allowed a greater proportion of salvage.

[Cited in The Aroma Mills, Case No. 2,041.]

[In admiralty. Libel by Bell and others against the sloop Ann for salvage. Decree for libellants.]

PETERS, District Judge. The libel, and the depositions and exhibits, in support of it, state, that on the 8th day of October, 1806, the ship Belvidere, Michael, master, owned by Bell, and others in the libel mentioned, in north lat. 38 deg. 42 min. and 60 deg. W. fell in with the sloop or cutter Ann. Her name blacked over, so as scarcely to be discernible. She had been loaded with fish; part whereof had been thrown overboard. Her situation was critical, having been stripped and deserted by her officers and crew. On taking possession of her, about forty barrels of fish were thrown overboard to lighten her. She was taken in tow by the ship, and brought to Philadelphia the 29th of the same month, with great labour and difficulty. She arrived within the capes of Delaware, on the 21st. A gale of wind blew hard for near three days in the bay, and put the ship into difficulties for want of hands, and required great labour and exertion of those on board the sloop, to prevent her loss. The sloop was full of water when boarded, and had neither sails or rigging; but these were supplied from the ship, which towed the sloop upwards of a thousand miles. The chief mate of the ship, with Frederick Collins, John Holme, and the boy Jacob, were put on board the sloop when taken possession of, and so continued until her arrival at Philadelphia. Their duty was to attend to the sails, steer after the ship, keep her free, and other necessary business, both before and after her separation from the ship. The value of the vessel and freight, as it is stated in the policy and freight list, amounted to more than $12,000.

I see nothing in the principles of this case, to distinguish it from cases of salvage, frequently occurring here. In the facts, there is much merit and some singularity. I think it is among the few cases of vessels entirely deserted, and left without any part of the crew, to their fate. This may cause an appearance of hopeless dereliction; but it is no more so than that of goods thrown overboard, or found flotsam, or ligan. The value of the ship and freight has its usual influence. It operates, on a comparison with the amount of property saved, to increase the proportion of salvage, from that allowed where the reward is greater, when the fund

out of which it is granted is more ample. I increase or diminish this proportion, according to the amount of the articles saved. Proportions of the amount of sales either in gross or nett, or in the total value of the articles, where their value is found by appraisement, are not so much rules with me, nor should they be, as the sum actually received by the salvors. If the property saved is considerable, the proportion is less; if small, the ratio is greater; so as to produce a sum, in my mind sufficient, to reward the salvors, and encourage others. This must be regulated by circumstances, and an attention to the interests of the owners, as well as the claims of the salvors. If the amount is small, it is a casualty of which they must take the hazard. They can only have a reasonable reward, in a fit proportion of the property saved, whatever may be the property risked. I have never heard of any losses accruing to ships, while saving lives or property at sea. In the instances, and they are not few, I have generally had before me, no more profitable employment could be found for the ships, or their crews, engaged in the risks and dangers so much relied on, for swelling rewards as cases of salvage; be this as it may, the due weight of such circumstances has never been overlooked. As to labour and difficulty, one cannot nicely balance and weigh them; they being generally produced by circumstances incapable of estimation. Some advantages accrue to ships taking on board the crews of perishing vessels; they always assist in the navigation, and often in the salvage. In the present instance the Belvidere had no such advantages; and being obliged to divide her crew, her risk was increased, and they experienced more difficulties: but I know not how to make this a matter of pecuniary calculation. The officers and crew always participate in the amount allowed to the ship; their proportions are greater or less, as the total of salvage is great or small. I gave my opinion, and mentioned my practice on this head, in the Case of The Cato, [Taylor v. Cato, Case No. 13,786,] in these words: "I cannot depreciate the services performed by the officers and crew of a vessel of small value, by making that the rule for reward, either as it respects the owners of the vessel saving, or of the property saved. Nor can I inflate a case of little merit, by augmenting the salvage, in any thing like the proportion of value of a vessel and cargo of great amount." If the whole amount of salvage be but an inadequate reward, the men who stake their lives and apply their labour, must be considered in remuneration, equally with the owners of the ship and cargo, alleged to be put to hazard. It is an extra duty and voluntary service, to which mariners cannot be legally compelled, and must be invited.

As to any argument founded on the total dereliction by the officers and crew of the deserted vessel, I see not its force. The owner of the derelict, as it is called, may sometimes be benefitted by signals and exertions, made by any or all of the crew remaining in his vessel; but I do not see that because his case, though wanting such benefits, is the more hopeless, the conduct of the salvor becomes more meritorious. I have always considered the saving the lives of the officers and crew of a perishing vessel, the most valuable and laudable part of the transaction. I have never esteemed the amount of the property recovered, worthy of comparison with it; much less does it deserve to be elevated in the scale of merit entitling to greater pecuniary reward, than that allotted to those who saved lives, as well as property. I confess, that if my obligations in the station I fill, justified me in yielding to my sensibilities, I should reward those who saved life, in a far greater degree than the salvors of property. I think the policy of encouraging risks to save lives in jeopardy, should warrant a preference in reward of the former, much beyond that allowed to the latter. At any rate, it would be highly discouraging, imprudent and unjust, to increase the compensation and premium, because no lives were saved, when the property was rescued from destruction.

Considering this case under every aspect in which I have viewed it, and it being one wherein the property recovered is not very considerable, and, of course the property saved is in less proportion to that risked, and the labour and difficulty of securing it have been great, I allow for salvage, one-half the net amount of sales, to be divided as directed in the case of The Cato, [Case No. 13,786;] save that the first mate, and hands put on board the sloop Ann, are to receive half a share more than those on board the Belvidere, on account of greater peril and additional exertion, after parting with the ship during the storm in the bay of Delaware. I very cheerfully follow the precedent prescribed to me in the Case of the Blaireau, 2 Cranch, [6 U. S.] 240, and give the boy Jacob an entire share, to be received by himself, and for his own use, for this extra duty. It is true that the officers and hands on board the Belvidere, had their portion both of labour and difficulty; but I think those in the deserted vessel, with less means and worse accommodations, were more perilously situated, especially after parting with the ship: a hazard they encountered, during the whole of the passage, in a vessel not thought safe or seaworthy, by its own officers and crew. Additional encouragement should be given to such adventurous salvors, from motives both of policy and justice.

---

BELL, (BULLARD v.)  See Case No. 2,121.

BELL, (COLLINS v.)  See Case No. 3,010.